1  **DONALD AMAMGBO**
   **123 OAKPORT, SUITE 4900**
2  **OAKLAND, CA 94621**
   **TELEPHONE:  510 615 6000**
3  **FACSIMILE: 510 615 6025**

4  **REGINALD TERRELL**
   **THE TERRELL LAW GROUP**
5  **223 25TH STREET**
6  **RICHMOND 94804**
   **510 237 9700**
7  **FACSIMILE: 510 237 4616**

8  **Attorneys for Plaintiff**

9

*E-filing*

*FILED*

APR 1 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
OAKLAND CALIFORNIA

ADR

10            UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12  KAREN DAVIS, on behalf of herself and       No.    **C08-01937**
    all others similarly situated,
13                                              CIVIL - CLASS ACTION

                Plaintiff,
14                                              JURY TRIAL DEMANDED

15      vs.

16  REDDY ICE HOLDINGS, INC.; ARCTIC
    GLACIER INC; ARCTIC GLACIER
17  INTERNATIONAL INC.; AND HOME
18  CITY ICE COMPANY,

19
                Defendants
20

21                        _____/

22              **CLASS ACTION COMPLAINT**

23      Plaintiff, KAREN DAVIS ("Plaintiff") on behalf of herself and all others similarly

24  situated, bring this action under the federal antitrust laws §§ 4 and 16 of the Clayton Act, 15

25  U.S.C. §§ 15, 26, to recover treble damages, injunctive relief, and the costs of suit, including

26  reasonable attorneys' fees and experts' fees, for the injuries to the Plaintiff and proposed class

27  members she represents resulting from Defendants' violation of the federal antitrust laws,

28  specifically Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  The allegations set forth

CO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

-1-

1  below are based upon information and belief pursuant to the investigation of counsel, except as to
2  those allegations regarding the Plaintiff.

3  **NATURE OF CLAIM**

4  1.   This class action, brought under the federal antitrust laws, arises out of a
5  conspiracy among Defendants - United States and Canadian ice producers - to fix prices, to
6  allocate markets, customers and territories and to commit other anticompetitive acts for the
7  purpose and effect of unlawfully fixing, raising, maintaining, and/or stabilizing prices of ice sold
8  in plastic bags or in large blocks ("packaged ice") in the United States.

9  2.   American consumers typically encounter packaged ice as the bagged ice sold in a
10 freezer in the nearest convenience store. That freezer usually bears the trade marks of the ice
11 manufacturer.   Generally, a store owner is an indirect purchaser from the packaged ice
12 manufacturer.   The packaged ice manufacturer delivers packaged ice in trucks and fills the
13 branded freezer.

14 3.   There are only three major producers of packaged ice in the United States and
15 Canada - Reddy Ice Holdings, Inc. ("Reddy Ice"), Arctic Glacier Inc. ("Arctic Glacier"), and The
16 Home City Ice Company ("Home City") (all defined formally below).

17 4.   The number one U.S. packaged ice product is Reddy Ice. On March 5, 2008, the
18 United States Department of Justice executed a search warrant at the Dallas, Texas headquarters
19 of Reddy Ice. On March 6, 2008, Arctic Ice announced that it had "bec[o]me aware [that] the
20 Antitrust Division of the United States Department of Justice is conducting an investigation into
21 possible antitrust issues in the packaged ice industry." Arctic Glacier promised that it would
22 "cooperate with authorities" in the investigation.

23 5.   To obtain a search warrant, the United States had to have probable cause, accepted
24 by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of
25 executing the search warrant - that is, the United States had to have evidence sufficient to warrant
26 a person of reasonable caution to believe that raiding the offices of a seemingly lawful business
27 would uncover evidence of antitrust violations and that claimed evidence had to have been
28 examined and accepted by a magistrate. That belief, which was recounted in sworn affidavit or

-2-

COMPLAINT

1  by testimony, must be grounded on reasonably trustworthy information.

2  6.    Moreover, a report published by Reuters on March 14, 2008 revealed that
3  management and employees of Reddy Ice Holdings "have received grand jury subpoenas seeking
4  information related to a[n] anti-trust probe." The grand jury is located in the Eastern District of
5  Michigan.

6  7.    The distribution networks of the three major packaged ice producers show all the
7  markings of territorial allocations. The major producers hold large swaths of contiguous territory
8  in the United States. They have little, if any, overlap in the locations they serve despite having
9  the ability and resources to compete with each other.

10  8.    Indeed, over the past decade, Defendants have honed a strategy of avoiding each
11  other's territories, while otherwise growing their businesses through acquisition, even when it has
12  been against their unilateral economic self-interest to do so.

13  9.    Further, the structural characteristics of the packaged ice market make it uniquely
14  susceptible to anticompetitive acts. Packaged ice is a highly perishable and expensive to
15  transport and store. The demand (in a hypothetical competitive market) for packaged ice is
16  highly inelastic. Packaged Ice is a commodity product. For the indirect customer (e.g., a
17  retailer), price is the most significant factor in the purchase decision.

18  10.    In simple terms, the market for packaged ice shares numerous characteristics with
19  markets, such as concrete production, where price fixing is often endemic.

20  11.    The price of packaged ice has risen steadily and consistently over the class period,
21  notwithstanding the gyrations that should be expected due to varying input costs.

22  **JURISDICTION AND VENUE**

23  12.    The Court has jurisdiction over this action pursuant to 15 U.S.C. §§15 and 26, and
24  pursuant to 28 U.S.C. §§1331, 1337(a).

25  13.    Venue is proper in the Northern District of California pursuant to Section 22 of the
26  Sherman Act, and 28 U.S.C. § 1391(b) and (c). Some or all Defendants reside, are licensed to do
27  business, are doing business, had agents, or are found to transact business, in this District and/or
28  the claims arose in this District.

-3-

1     14.    The activities of Defendants and their co-conspirators were within the flow of,

2  were intended to, and did have, a substantial effect on the foreign and interstate commerce of the

3  United States.

**PARTIES**

5     15.    Plaintiff Karen Davis is a Contra Costa County, California resident who

6  purchased packaged ice indirectly from one or more of the Defendants during the class period,

7  and was damaged as a result of Defendants' unlawful conduct.

8     18.    Defendant Reddy Ice Holdings, Inc. ("Reddy Ice") is a Delaware corporation with

9  its principal place of business located at 8750 North Central Expressway, Suite 1800, Dallas, TX

10  75321.

11     19.    Defendant Arctic Glacier Inc. is a business entity organized under the law of

12  Alberta, Canada, with its principal place of business located at 625 Henry Avenue,, Winnipeg

13  Manitoba, Canada.

14     20.    Defendant Arctic Glacier International Inc. (together with Arctic Glacier Inc.,

15  "Arctic Glacier") is a wholly-owned subsidiary of Arctic Glacier Inc. and serves as its operating

16  and holding subsidiary in the United States. Arctic Glacier International is a Delaware

17  Corporation with its principal place of business located at 1654 Mathaler Lane, West St. Paul,

18  Minnesota 55118.

19     21.    Defendant The Home City Ice Company ("Home City") is a privately-held Ohio

20  corporation located at 6045 Bridgetown Road, Cincinnati, Ohio 45248.

**CO-CONSPIRATORS**

22     22.    Upon information and belief, various other persons, firms and corporations, not

23  named as Defendants herein, have participated as co-conspirators with the Defendants in the

24  violation of law alleged in this Complaint and have engaged in conduct and made statements in

25  furtherance of the conspiracy.

26     23.    The acts charged in this Complaint have been done by Defendants and their co-

27  conspirators, or were authorized, ordered or done by their respective officers, agents, employees

28  or representatives while actively engaged in the management of each Defendant's business or

-4-

COMPLAINT

1  affairs.

2  ## INTERSTATE TRADE AND COMMERCE

3  24.    The Defendants are leading manufactures of packaged ice in the United States and

4  Canada.

5  25.    Packaged Ice is sold throughout the United States in interstate commerce.

6  26.    The restraints hereinafter alleged have indirectly and substantially affected

7  interstate commerce in that the Defendants have deprived Plaintiff and the class of the benefits of

8  free and open competition it the packaged ice market throughout the United States and Canada.

9  ## THE MARKET FOR PACKAGED ICE

10  27.    Packaged Ice is sold in cubes or blocks (or other similar shapes) in packages

11  ranging from 5 lbs. to 50 lbs. It is commonly sold in supermarkets, convenience stores, beer and

12  liquor stores, drug stores and other commonplace retail outlets.

13  28.    Packaged Ice has numerous uses, for the most obvious of which is to maintain

14  foods and beverages at suitable cool temperatures for human consumption, especially in

15  conjunction with outdoor events and social gatherings.

16  29.    The market demand for packaged ice, under competitive conditions, is inelastic.

17  That is, an increase in price would produce a less than offsetting reduction in quantity sold.

18  Thus, an artificial increase in price would be remunerative.

19  30.    Packaged Ice is a commodity. Consumers have little, if any, preference as to

20  brands.

21  31.    The ultimate consumer demand for packaged ice is driven by many factors

22  unrelated to price.

23  32.    For the indirect purchasing retailer, however, under normal conditions and in the

24  presence of bona fide competition, the cost of Packaged Ice is the most important factor in its

25  purchasing decision.

26  33.    For ultimate consumers, the cost of packaged ice is seldom significant relative to

27  the overall costs of the occasions for which it is used.

28  34.    Given its extremely perishable character in warmer conditions, as well as the

-5-

COMPLAINT

1 │ similar character of the commodities it is used to cool, ultimate consumers will seldom be able to

2 │ engage in price-comparison shopping for packaged ice.

3 │     35.    There are no economically reasonable substitutes for packaged ice.

4 │     36.    The ultimate consumer demand for packaged ice is highly seasonal, rising

5 │ significantly in the warmer months. Peak demand during the warmer months of May through

6 │ September accounts for 69 percent of annual revenues.

7 │     37.    The ultimate consumer demand for packaged ice is geographically specific, with

8 │ packaged ice being more favored in those parts of the country where the warmer season begins

9 │ earlier and endures longer.

10 │     38.    Packaged Ice producers can and do entrench themselves with their retail

11 │ customers by installing on-location freezers, which freezers bear the producers' trademarks and

12 │ are owned by the producers. This raises the costs to purchasers of switching from one packaged

13 │ ice supplier to another.

14 │     39.    Typical customers (i.e., retailers) carry only one brand of ice and have long terms

15 │ relationships with the manufacturer from whom they purchased packaged ice products.

16 │     40.    There are substantial barriers that preclude or reduce entry into the production and

17 │ distribution of packaged ice. The industry has a high start-up and replacement costs.

18 │     41.    Packaged Ice is costly to transport and costly to store. As a result, packaged ice

19 │ effectively cannot be delivered more than 100 miles away from the plant where it is produced.

20 │     42.    Before the past ten or fifteen years, packaged ice was produced and distributed by

21 │ local and regional firms. The last decade and a half have brought widespread consolidation as

22 │ Defendants have acquired numerous independent

23 │     43.    Reddy Ice is the largest manufacturer and distributor of packaged ice in the United

24 │ States. It sells its products primarily under the Reddy Ice brand to some 82,000 locations in some

25 │ 31 states and the District of Columbia. It has over 2,000 employees and distributes its products

26 │ to the marketplace through indirect store delivery, warehouse programs, distributors, jobbers, and

27 │ its proprietary on-site making technology.

28 │     44.    Reddy Ice had sales of $339 million in 2007. It holds the dominant market

-6-

COMPLAINT

1 || position in the United States.

2 | 45. Reddy Ice manufactures and distributes ice products, including cubed ice, crushed
3 | ice, half-moon and cylindrical ice, and block ice. It sells approximately 1.9 million tons of ice
4 | per year, primarily packaged in seven and ten pound bags, sold principally to convenience stores
5 | and supermarkets.

6 | 46. Over the past several years, Reddy Ice has conducted a series of acquisitions
7 | designed to eliminate competition in the production and distribution of packaged ice.

8 | 47. Reddy Ice's acquisition program has focused on acquiring small local and regional
9 | ice producers that operate either within a contiguous to its existing sales areas for the purpose of
10 | eliminating competition. Reddy Ice has not acquired ice producers in areas that would bring it
11 | into competition with either Arctic Glacier or Home City.

12 | 48. From 1997 through 1999, Reddy Ice (and its predecessor) pursued a
13 | "consolidation strategy" acquiring some 80 ice businesses, most significantly acquiring in 1998
14 | the "Reddy Ice Corporation" and Cassco Ice & Cold Storage. Previously, Suiza's Reddy Ice had
15 | made some 28 acquisition in the January 1997 through April 1998 period. In 2003, Reddy Ice
16 | acquired Triangle Ice Co. for $64 million. Then, in 2004, it acquired 11 more ice companies. In
17 | 2005, it acquired another two, and in 2006, another 10. None of Reddy ice's acquisitions were in
18 | regions that would place it into competition with Arctic Glacier or Home City.

19 | 49. Arctic Glacier is another leading producer, marketer and distributor of packaged
20 | ice in the United States, selling *(inter alia)* under the brand name Arctic Glacier ® Premium ice.
21 | Arctic Glacier operated 37 manufacturing plants and 50 distribution facilities across Canada and
22 | the northeast, central and western United States, serving more than 70,000 retail accounts.

23 | 50. Arctic Glacier is the second-largest producer and distributor of packaged ice in the
24 | United States, with total revenues of $249 million for 2007. Of these revenues, more than 80
25 | percent comes from its United States operations, in which it has dominant market positions in
26 | major eastern seaboard cities such as New York and Philadelphia, as well as in New England,
27 | California and the Midwest.

28 | 51. During the last several years, Arctic Glacier has engaged in an acquisition

-7-

1 | campaign designed to eliminate competition in the market for packaged ice. Indeed, Arctic
2 | Glacier has stated that the acquisition of contiguous, competing ice businesses is its business
3 | strategy.

4 |     52.    Since 1997, Arctic Glacier has completed some 62 acquisitions, at a cost of some
5 | $505 million.

6 |     53.    In 2006, Arctic Glacier acquired a group of six entities in California for $188.5
7 | million, giving its market dominance in California, where neither Reddy Ice nor Home City
8 | operates. In March 2007, Arctic Glacier enhanced its dominance in California by acquiring
9 | Union Ice-Pacific L.P. of Los Angeles, California, again acquiring operations contiguous to, or
10 | overlapping with, its existing operations.

11 |     54.    Also, during 2006, Arctic Glacier acquired an upstate New York producer, Happy
12 | Ice LLC, giving Arctic Glacier dominance in a region where there is no competition from either
13 | Reddy Ice or Home City.

14 |     55.    Home City sells ice across all of Ohio, Indiana, Illinois, Kentucky, and West
15 | Virginia, as well as parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland.
16 | Home City manufactures 4,400 ton of ice per day in 28 state-of-the-art manufacturing plants,
17 | with 36 distribution centers, and has a fleet of over 500 trucks to serve the Midwest.

18 |     56.    Together, Defendants are the largest of packaged ice in the United States and
19 | North America. Sales by Defendants comprise approximately 70% of the packaged ice sold to
20 | retailers and similar businesses.

21 | **ANTICOMPETITIVE CONDUCT**

22 |     57.    Defendants hold a dominant position in the sale of packaged ice in the United
23 | States. They have abused that dominance through collusive activity to raise, fix and maintain the
24 | price of packaged ice at supra-competitive levels. In short, among other things, they have agreed
25 | to allocate territories and customers among themselves and to avoid competition with each other.

26 |     58.    Beginning at least as early as January 1, 2002, the exact date being unknown to
27 | Plaintiff, and continuing thereafter to the present day, Defendants and their co-conspirators
28 | engaged in unlawful conduct, combination or conspiracy with the purpose and effect of fixing

-8-

1  prices, allocating markets and committing other anticompetitive practices designed to unlawfully
2  fix, raise, maintain, and/or stabilize prices of packaged ice in a per se violation or unreasonable
3  restraint of trade in violation of Section 1 of the Sherman Act.

4      59.    During the class period, Defendants engaged in illegal, anticompetitive conduct
5  by, *inter alia*, allocating markets so that Defendants did not compete with each other.

6      60.    This resulted in the following market division: (1) Reddy Ice has the dominant
7  market position in the U.S. sunbelt states, from Florida to Arizona, the mid-Atlantic and the
8  Northwest; (2) Arctic has a dominant market position in the Central and Northeastern states and
9  California; and (3) Home City has dominant market position in the Illinois, Indiana and Ohio as
10  well as on the fringes of some adjoining states.

11      61.    There is little, if any, overlap in the geographic markets where each Defendant
12  operates.

13      62.    Defendants have engaged in conduct inconsistent with their economic self-interest
14  to perpetuate their territorial allocation. By way of illustration, at all times, it would have been in
15  Arctic Glacier's economic self-interest to have entered the packaged ice market on the southern
16  tier of the United States, as the demand for packaged ice is strongest in those area. Arctic Glacier
17  could have entered that market with little fear of retaliation from the dominant incumbent, Reddy
18  ice, because (excepting Arctic Glacier's 2006 acquisitions in California) Reddy Ice would have
19  little incentive to enter in the relatively unattractive markets where Arctic Glacier is dominant.

20      63.    On information and belief, Reddy Ice agreed to Arctic Glacier's California
21  acquisitions on condition that Arctic Glacier would not enter Reddy ice's lucrative markets along
22  the southern tier of the United States. California is contiguous to Reddy ice's existing territories,
23  and would have been a logical extension of its geographic area had it chosen to enter California.

24      64.    Defendants agreed not to compete head to head in any of the markets in which one
25  of them was dominant. Each region of the United States, as previously alleged, is controlled by
26  one particular packaged ice manufacturer.

27      65.    On or about March 6, 2008, Reddy Ice issued the following press release:
        Reddy Ice Holdings, Inc. (NYSE:FRZ) announced that federal officials
28          executed a search warrant at the Company's corporate office in Dallas on

-9-

COMPLAINT

1    March 5, 2008.  The Company is cooperating with the authorities.

2    The Company's priority mission is to provide superior service to its customers, and it will continue to function in a normal business matter.

3

4    66.    On or about March 7, 2008, Reddy Ice issued the following additional press

5    release:

6    Reddy Ice Holdings, Inc. (NYSE:FRZ) is providing further information to supplement the press release issued on March 6, 2008 regarding the

7    execution of a search warrant at the Company's corporate office in Dallas on March 5, 2008.  The execution of the search warrant was indirected by

8    the Antitrust Division of the United States Department of Justice with an investigation of the packaged ice industry.  The Company's board of

9    directors has formed a special committee of independent directors to conduct an internal investigation.

10

11   The Company will continue to serve its customer in its normal business manner.

12   67.    By engaging in conduct that allocated the market among the Defendants, price

13   competition was reduced or eliminated throughout the United States./

14   68.    On or about March 6, 2008, Arctic Glacier issued the following press release:

15   Arctic Glacier Income Fund (TSX: AG.UN) today announced that on March 5, 2008, its operating subsidiary, Arctic Glacier Inc., became aware

16   the Antitrust Division of the United States Department of Justice is conducting an investigation into possible antitrust issues in the packaged

17   ice industry.  The company will cooperate with authorities in the course of the investigation.

18

19   ## ALLEGATIONS OF ANTITRUST INJURY TO PLAINTIFFS AND THE CLASS

20   69.    The aforesaid combination and conspiracy has had the following effects, among

21   others:

22        a.    it restrained and eliminated price competition with respect to packaged ice;

23        b.    it raised, fixed, maintained and stabilized the price of packaged ice at supra-

24   competitive levels; and

25        c.    it deprived indirect purchasers of packaged ice of free and open competition in the

26   packaged ice market.

27   70.    During the period covered, Defendants charged Plaintiff and the class

28   anticompetitive prices for packaged ice.  By reason of the alleged violations of the antitrust laws,

-10-

1  Plaintiff and the class have sustained injury to their businesses or property, having paid higher

2  prices for packaged ice than they would have paid in the absence of the illegal contract,

3  combination of conspiracy, and, as a result, have been injured in their business and have suffered

4  damages in an amount presently underdetermined. This is an antitrust injury of the type that the

5  antitrust laws were meant to punish and prevent.

6  **CLASS ACTION ALLEGATION**

7      71.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff bring this

8  action on their own behalf and on behalf of all others similarly situation. The "class" is defined

9  as:

10         All persons, corporation, and other legal entities in the United States
           (excluding governmental entities, defendants, their subsidiaries, and any
11         co-conspirators), who purchased packaged ice from one or more of the
           Defendants (the "class") in the United States or Canada at any time from at
12         least January 1, 2002 through the present (the "class period").

13
       72.    The members of the class are so numerous and geographically dispersed across the
14
   country that joinder of all members of the class would be impracticable. Member of the class are
15
   located through the United States and Canada. The exact number of class members is unknown
16
   by Plaintiff at this time, and Plaintiff believe that the class is in the tens of thousands. The
17
   identities of the members of the class can only be discovered through inspection of Defendants'
18
   records, which are or should be readily available.
19
       73.    Plaintiffs' claims are typical of the members of the class. Plaintiff and all
20
   members of the class were commonly impacted and damaged by Defendants' wrongful conduct.
21
   Plaintiff and the class purchased packaged ice at artificially inflated, non-competitive prices
22
   induced by Defendants' wrongful conduct alleged herein.
23
       74.    Plaintiff will fairly and adequately protect the interests of the class. The interests
24
   of Plaintiffs are coincident with, and not antagonistic to, those of the class. In addition,
25
   Plaintiffs' counsel is experienced and competent in the prosecution of complex class action
26
   antitrust litigation.
27
       75.    Questions of law and fact common to the members of the class predominate over
28

-11-

COMPLAINT

1   questions that may affect only individual members. Defendants have acted on grounds generally

2   applicable to the entire class. Among questions of law and fact common to the class are:

3       a.      Whether Defendants conspired with the purpose and affect of fixing prices,

4   allocating markets and committing other anticompetitive practices designed to unlawfully fix,

5   raise, maintain, and/or stabilize prices of packaged ice;

6       b.      Whether Defendants' conduct violated Section 1 of the Sherman Act:

7       c.      The existence, duration, and illegality of the contract, combination or conspiracy

8   alleged herein;

9       d.      The effect upon and the extent of injuries sustained by Plaintiff and members of

10  the class and the appropriate type and/or measure or damages;

11      e.      Whether Defendants took affirmative steps to conceal the contract, combination or

12  conspiracy alleged herein; and

13      f.      Whether Plaintiff and the class are entitled to declaratory and/or injunctive relief.

14      76.     Class action treatment is superior to any alternatives for the fair and efficient

15  adjudication of this controversy. Class treatment will permit the tens of thousands of similarly

16  situated persons to prosecute common claims simultaneously and efficiently in a single forum;

17  without the unnecessary duplication and effort and expense that individual actions would require.

18  Class treatment will also permit the adjudication of class members' relatively small claims, which

19  would otherwise go unaddressed as those plaintiffs cannot afford to litigate individually antitrust

20  claims against such large corporate defendants.

21      77.     Plaintiffs are not aware of any difficulties that are likely to be encountered in the

22  management of this action that would preclude its maintenance as a class action.

23                      **FRAUDULENT CONCEALMENT**

24      78.     The running of any statute of limitations has been suspended with respect to any

25  claims which Plaintiffs and the other members of the class have sustained as a result of the

26  unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive

27  relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various

28  devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the

-12-

1  unlawful combination and conspiracy alleged herein.

2  **COUNT 1 - VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

3  79.    Plaintiff incorporates by reference as if fully set forth herein the allegations

4  contained in the preceding paragraphs of this Complaint.

5  80.    Defendants and unnamed conspirators entered into and engaged in a contract, or

6  conspiracy in an unreasonable restrain of violation of Section 1 of the Sherman Act.

7  81.    As a result of the contract, combination or conspiracy among Defendants alleged

8  herein, the prices charged to Plaintiff and the class for packaged ice were raised, fixed,

9  maintained, and stabilized in the United States.  The alleged contract, combination, or conspiracy

10  is a *per se* violation of the federal antitrust laws and is at a minimum an unreasonable and

11  unlawful restraint of trade.

12  82.    The contract, combination, or conspiracy has the following effects:

13  a.    Priced charged to Plaintiff and the class for packaged ice was raised, fixed,

14  maintained or stabilized at non-competitive levels;

15  b.    Plaintiff and the class have been deprived of the benefits of free, open and

16  unrestricted competition in the market for packaged ice; and

17  c.    competition in establishing the prices paid and locations of doing business has

18  been unlawfully restrained, suppressed and eliminated.

19  83.    As an indirect and proximate result of Defendants' unlawful conduct, Plaintiff and

20  the class have been damaged by paying supra-competitive prices that they would not have had to

21  pay but for the unlawful conduct of Defendants alleged herein.

22  **PRAYER FOR RELIEF**

23  WHEREFORE, Plaintiff prays that:

24  A.    The Court determine that this action may be maintained as a class action under

25  Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and indirect that reasonable notice

26  of this action as provided by Rule 23(c)(2), Federal Rules of Civil Procedure, be given each and

27  every member of the class:

28  B.    The unlawful combination and conspiracy alleged herein be adjudicated and

-13-

1  decreed to have been in violation of Section 1 of the Sherman Act;

2      C.    Judgment be entered for Plaintiff and the members of the class against Defendants

3  for three times the amount of damages sustained by Plaintiff and the members of the class as

4  allowed by law, together with the costs of this action, including reasonable attorneys' fees;

5      D.    Defendants be enjoined from continuing the unlawful contract, combination or

6  conspiracy alleged herein; and

7      E.    Plaintiff and the class be granted such other, further and different relief as the case

8  may require or as the Court may deem just and proper under the circumstances.

9                          **JURY DEMAND**
   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.
10

11  Date: April___, 2008                    Respectfully submitted,

12

13

14                                By: _____
                                      DONALD AMAMGBO
15                                    REGINALD TERRELL
                                      Attorneys for Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

C-08-1937-BZ

**JS 44** (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

KAREN DAVIS, on behalf of herself and all others similarly situated

**DEFENDANTS**

REDDY ICE HOLDINGS (See Attachment "A")

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Reginald Terrell, The Terrell Law Group, 223 25th Street, Richmond, CA
94804 510-237-9700
Donald Amamgbo, Amamgbo & Associates, 7901 Oakport Street, #4900,
Oakland, CA 94621

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | or Defendant) | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | 26 USC 7609 | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sherman Act

Brief description of cause:

## VII. REQUESTED IN
## COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes ☐ No

## VIII. RELATED CASE(S)
## IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND        ☐ SAN JOSE

DATE
04-11-2008

SIGNATURE OF ATTORNEY OF RECORD

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                    Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## Attachment B

, INC.; ARCTIC GLACIER INC; ARCTIC GLACIER INTERNATIONAL INC.; AND HOME CITY
ICE COMPANY,